654 A.2d 560

Claude FENINGER, Appellee,

v.

CAPITAL ACCUMULATIONS SERVICES, INC. T/A CAS
Financial Securities, and Bruno Giordano, Appellants.

Superior Court of Pennsylvania.

Argued June 21, 1994.

Filed Dec. 27, 1994.

James R. Malone, Haverford, for appellants.

Harris B. Savin, Philadelphia, for appellee.

Before ROWLEY, President Judge, and CAVANAUGH and TAMILIA, JJ.

CAVANAUGH, Judge.

This matter is presently before the court on the appeal of Capital Accumulation Services, Inc., t/a CAS Financial Securities and Bruno Giordano. Appellants appeal from orders entered March 3, 1989 (which granted appellee's motion for summary judgment) and December 29, 1993 (which granted judgment in favor of appellee in the amount of $164,361) of the Court of Common Pleas of Delaware County. After review of the record and relevant authority, we affirm.

A brief review of the facts. Claude Feninger first met appellant Bruno Giordano, the controlling shareholder of Capital Accumulations Services, Inc., in 1982. Within months Mr. Feninger engaged the appellants to provide him with financial services. In 1984 the appellants brought to appellee's attention a tax shelter investment involving the lease of breeding cattle. In December of 1984 Mr. Feninger purchased an Old

Chisholm Trail Genetics, Inc. ("OCTG") breeding management agreement ("BMA"). This investment involved the lease of cows for the purpose of insemination and gestation of calves. Any calves born became the property of the investor.

On December 22, 1986 Feninger filed the instant lawsuit claiming violations of the Pennsylvania Securities Act of 1972. (70 P.S. § 1–101 *et seq.*) Specifically, appellee alleged that the appellants were liable to him under Section 503 of the Act [1] in that appellant Giordano acted as an agent of Old Chisholm in the sale of an unregistered security in violation of Section 201 of the Act.[2] On June 24, 1988 appellants filed a motion for summary judgment to which appellee filed a cross-motion on July 26, 1988. On March 2, 1989 the court below granted Feninger's cross-motion for summary judgment. On December 9, 1993 the court below decided the issue of damages and entered judgment in favor of appellee. This appeal followed.

Appellants raise two questions:

1. Section 503(a) provides:

   Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

   Section 502 of the Act, "Violation of registration requirements" provides in pertinent part:

   Any person who violates section 201 or any material condition imposed under section 206 or 207 shall be liable to the person purchasing the security offered or sold in violation of section 201 from him who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security, or for damages if he no longer owns the security.

2. Section 201 provides:

   It is unlawful for any person to offer or sell any security in this State unless the security is registered under this act or the security or transaction is exempted under section 202 or 203 hereof.

1. Is appellee's claim time-barred by the one-year limitation period of 70 P.S. § 1–504(b)?

2. Are appellants exempt from liability under 70 P.S. § 1–503(a)?

Our scope of review on appeal from summary judgment is stated as:

> In reviewing an order granting a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Moreover, in summary judgment proceedings, it is not the court's function to determine the facts, but only to determine if an issue of material fact exists. Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the trial court's conclusion that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (citations omitted).

*Schriver v. Mazziotti,* 432 Pa.Super. 276, 638 A.2d 224, 225–226 (1994).

Appellants first argue that Mr. Feninger's claim against them is time-barred by the provisions of 70 P.S. § 1–504(b). This section provides that:

> No action shall be maintained to enforce any liability created under section 502 (or section 503 in so far as it relates to that section) unless brought before the expiration of two years after the violation upon which it is based or the *expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting such violation, whichever shall first expire.* (Emphasis added).

On December 22, 1986 appellee filed this lawsuit. Appellants claim that since appellee had notice of all the facts constituting a violation of the Act more than one year before December 22, 1986, his suit is time-barred. Appellants claim that if the Act's "violation" was the sale of the unregistered

security to the appellee, the timeliness of his claim depends on whether he knew (or should have known) of the facts constituting the sale more than one year before filing suit. Appellants claim that appellee should have known that the BMA investment was unregistered. Appellants further claim that the status of the BMA investment as a "security" (which makes its unregistered sale a violation of the Act) is a legal conclusion and not a fact appellee needed to have "known" to prevent the one-year limitations period from applying.

The trial court, in its opinion filed when it granted appellee's summary judgment motion, addressed this argument. The court found that the cattle breeding agreement did constitute a security under the Act.[3] Accordingly, the Act applied to the transaction between Mr. Feninger and OCTG. The court further found that the appellants sold to the appellee an unregistered and non-exempt security in violation of the Act. The court also found that, while the plaintiff could have discovered that the agreements were not registered (so as to trigger the one-year statute), this knowledge would be relevant only if the investment was a "security", and it would be unreasonable to hold the appellee accountable for that determination.[4] Accordingly, the court found that the appellee could not reasonably be charged with, and did not, have the knowledge which would trigger the one-year limitation period under Section 504(b) and, therefore, his lawsuit was timely.

■ Upon review of the record before us we find no error in the court's findings. In our view the decision is also supported by the conclusion that a reasonable investor can not be charged with knowledge that a cow breeding agreement is a "security" so as to implicate application of the Pennsylvania Securities Act. Accordingly, we reject appellants' first claim.

Appellants also claim that they are not liable under Section 503 since they themselves did not, and could not, know that the BMA was a security.

3. Section 102(t) of the Act defines a security, *inter alia*, as including any "investment contract."

4. The court also noted that paragraph 12 of the BMA specifically stated that the investment was *not* a security.

■ Section 503(a) of the Act provides a defense to a broker-dealer or agent if he proves that he did not, and exercising reasonable care, could not, have known of the facts which establish liability. It is significant that the burden of proof is on the agent. Appellants, nevertheless, claim they are not liable under this standard.

■ We note, however, that appellants failed to assert this claim as an affirmative defense in their answer to appellee's complaint, did not raise it in their own motion for summary judgment, or in their response to appellee's motion for summary judgment. In fact, appellants first asserted this claim at oral argument on the issue of damages, one year after judgment had been entered as to their liability. Accordingly, this issue was not "timely and properly" raised at the trial level and has not been preserved for appellate review. *See: Paparelli v. GAF Corp., Inc.,* 379 Pa.Super. 62, 549 A.2d 597, 599 (1988); *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985); *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

■ Even were this issue not waived we note that the appellants, who held themselves out as investment specialists, had the burden to plead and prove that they did not and could not reasonably have known of the facts establishing liability. The sections of the Act which establish the time for filing of suit and the defense of not knowing the facts which establish liability differ in this material respect. In the latter the burden of proof was on the appellants to prove their lack of knowledge. This they failed to do.

As the court below's rulings were not in error, the orders appealed are affirmed.

Orders affirmed.